VIRGINIA HOT SPRINGS CO. v. HEGEMAN & CO.

(Circuit Court, S. D. New York. July 3, 1905.)

1. TRADE-MARKS AND TRADE-NAMES—UNLAWFUL COMPETITION.

Complainant and R. purchased parts of a tract of land containing springs which since 1845 had been known as "Healing Springs." R. named his springs the "Rubino Healing Springs," and sold the water under the name "Rubino Healing Springs Natural Lithia Water," while complainant's water was sold under the label, "Healing Springs. A Table & Medicinal Water," etc., until after R. began successfully to market his waters, when plaintiff imitated R.'s labels by dropping the words "A Delicious Table Water," and using the words "Uric Acid Solvent," suggested by R.'s labels, containing the words "Eliminates uric acid." Up to the time R.'s labels appeared, complainant had said nothing in its labels of "Healing Springs, Va.," used in R.'s labels, except: "Healing Springs. A Table & Medicinal Water. From the Great Thermal Region of the Appalachian Ranges"—and ending its label with the words, "For sale by leading druggists in the United States, or can be ordered direct from the Virginia Hot Springs Company, Hot Springs, Bath Co., Virginia," after which complainant changed its labels,' and added the words, "Healing Springs, Bath County, Va." It also appeared that all of the springs were at a place having a post office known as "Healing Springs." *Held*, that R.'s labels so clearly differentiated the waters sold by him from those marketed by complainant that he was not guilty of unlawful competition.

2. SAME—LACHES.

Complainant having been idle in the development of its springs from 1895 to 1896 or 1897, while R. was building up the springs in that locality and expending large sums of money in the enterprise, and until 1903, when it filed the bill for injunction, and in the meantime having imitated and copied R.'s methods, labels, and mode of advertising, it was guilty of such laches as estopped it from maintaining the suit.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, § 95.]

3. SAME—WORDS—RIGHT TO USE.

Where certain springs on an entire tract of land were known as the "Healing Springs," a purchaser of a portion of such tract, containing a part of the springs, was not entitled to the exclusive use of such name as against a purchaser of the balance, with the springs known as "Little Healing Springs," or "New Healing Springs," thereon.

In Equity.

Suit for injunction perpetually restraining defendant, Hegeman & Co., from in any form or manner whatsoever making use of the name "Healing" or "Healing Springs" in connection with any water not from the spring of the complainant, and from in any form or manner placing or causing to be placed upon containers of water not containing water from such spring, or upon the advertising indicia relating to such water, the name "Healing" or "Healing Springs," or any name or names substantially resembling such names "Healing" or "Healing Springs," and also from holding itself out to the public as the owner of the name or mark "Healing" or "Healing Springs," or as the owner of the springs known as the "Healing Springs," in Bath county, Va., and also from placing on containers of water, other than those holding water from the springs of the complainant, or upon the advertising indicia relating thereto, the twin waterfall mark shown in an exhibit attached to the bill of complaint. The defendant denies the existence of the alleged right to these names in complainant, and denies that it has in any way violated any of the complainant's rights. Further facts will appear in the opinion. Defendant gets its water from one Mr. Rubino, who is the real defendant, and who sells the water from his springs under the name, etc., complained of.

Joseph A. Stetson (Melville E. Ingalls, Jr., of counsel), for complainant.

Stern & Rushmore (Charles E. Rushmore, of counsel), for defendant.

RAY, District Judge (after stating the facts). The complainant is a corporation of the state of Virginia, and owns and operates three properties in the county of Bath, in said state, all in the same section, known respectively as "Healing Springs," the "Warm Springs," and the "Hot Springs." It was incorporated about April, 1892, and then became the owner of part of what is called the "Healing Springs Property." The complainant bottles and sells water from its spring known as the "Healing Springs," and on its bottles and other retainers for such water has certain labels and trade-marks containing the words "Healing Springs." In the bottles used for marketing this water up to 1894 were blown the words "Healing Springs Water, Bath County, Va." Since 1845 these springs now owned by complainant have been known as the "Healing Springs." Prior to 1892 there was a hotel there known as "Healing Springs Hotel." People came there and drank of the waters, and bathed in them. The property on which this spring, or these particular springs, was situated since 1845 has been known and designated in deeds and other papers and conveyed as the "Healing Springs Property." These statements refer generally to the property now owned in part by complainant, but largely by defendant.

In a book, "Mineral Springs of the United States and Canada," by Walton (3d Ed.), published in 1883, we find: "Healing Springs." "Location and Post Office—Healing Springs, Bath County, Vir-

ginia. * * * Hotel, Healing Springs." Then follows a long article giving a description of the waters and their properties, and an analysis thereof. Originally the lands upon which these springs of complainant are situated were of considerable extent, and embraced a stream of water including the Cascades and Twin Falls. These are small waterfalls on such stream. As compared with present times, the shipments and sales of water from the springs (now complainant's) were small, but still the business was carried on. No pains were taken with the grounds or springs, and no particular attention was given to making the hotel and surroundings attractive. It does not appear what amount of money is invested in complainant's hotel and cottages, bath and bottling house, but it is not very large. The evidence of sales and shipments of water from complainant's springs is that this commenced about 1868 to 1870, and that up to 1892 or 1894 the sales were made through a firm of druggists in Richmond, Va. The volume of business done up to 1894 or 1895, when the complainant came into the property, is not shown. At some time this property known as the "Healing Springs Property" was divided. The complainant became the owner of a small portion of the whole, containing what was formerly the main springs of the place, and one Jacob Rubino, who is defending this action, became the owner of the remainder, including the Cascades and the Twin Falls, and—what is quite important—a second group of springs on the undivided property when it and the springs took their name "Healing Springs." In one or more recent deeds of the Rubino property it has been spoken of as the "Little Healing Springs property, adjoining the Healing Springs property."

Mr. Rubino's springs have medicinal qualities quite similar to complainant's from which they are distant less than half a mile. Mr. Rubino has expended very large sums of money in laying out his grounds, building a hotel, etc., with baths and bathing houses, and is doing a very large business. He has advertised at very large expense, and evidently with good judgment. Before Mr. Rubino became the owner of these premises, this group of springs now owned by him had been generally known in that vicinity. as "Little Healing Springs," or "New Healing Springs," and at one time two small cottages were built there; and the waters of these particular springs were quite generally utilized, but were not bottled or put on the market. The other springs were sometimes called "Old Healing Springs." This was undoubtedly done, when done, after the new or little springs came generally into use to distinguish them. When Mr. Rubino came into possession of this property and began his improvements, he named it "Rubino Healing Springs," and it has continued to be so known. He so advertises them. All along there has been a "Healing Springs Creek," known and called such, running through this property—the part now owned by defendant. In literature advertising these springs prior to 1894, we find a reference to "The Cascades of Healing Springs Creek." In the book by Walton published in 1883, and above referred to, we find the author, in giving a description of the properties of these Healing Springs, saying, "It [the water] has

been well named, as it finds appropriate application to all ulcerated conditions, whether of the skin or mucous membrane." He then describes the ulcers, etc., this water will cure or heal. The evidence shows that these springs were named "Healing Springs" because of the healing properties of the waters.

In complainant's Exhibit No. 12, advertising pamphlet for season of 1896 put out by A. M. Stimson, manager, we find pictures of "Healing Springs Hotel," "Cottages," "Cottage Row," "Lion Rock," "Through the Gap," "Healing Springs Falls," and "Cascade Healing Springs." Both the Falls and Cascade are on the property now owned by Rubino. On Rubino's labels he has a picture of these Falls somewhat changed, while on complainant's labels we find a picture of the Cascade. Both show a double waterfall, but the fall of the Cascade is slight as compared with that of the Falls. It is. doubtful whether or not the picture of the "Healing Springs Falls" shows a double fall, but it is clear that the picture on Rubino's label is not made to imitate or intended to imitate that on complainant's. label. In 1899 Rubino registered a trade-mark, No. 33,415. The material part reads:

"My trade-mark consists of the representation of waterfalls and surrounding shrubs and trees, with a stream in the foreground and mountains in the background. This has generally been arranged as shown in the accompanying fac simile, in which the representation has the appearance of a medallion bounded by a circular outline. The shape of the medallion may be changed without altering the character of the trade-mark, the essential feature of which is the representation of waterfalls and surrounding shrubs and trees, with a stream in the foreground and mountains in the background. This trade-mark has been continuously used in my business since July 1, 1897. The class of merchandise to which this trade-mark is appropriated is beverages, and the particular description of goods comprised in said class upon which I use the said trade-mark is mineral water. It is usually displayed on bottles, casks, and cans containing the goods by placing thereon a printed label on which the described trade-mark is shown."

This trade-mark is the modified picture of these falls. The background of mountains does not show in the advertisement of 1896,. and it is not clear that such advertisement shows a double fall. Complainant has never used this as a trade-mark or as a mark to designate or distinguish its goods or waters. It was not made to imitate or simulate the Cascades of the complainant's label, nor does it simulate them. If it be a true picture of anything or of any natural object, it is something Rubino has the right to use. If it truly represents the "Healing Springs Falls" mentioned in the advertising pamphlet of 1896, and there shown, Rubino has the right to use it, if not used with a fraudulent intent, or a purpose to mislead and palm off on the public waters from Rubino's springs as water from complainant's springs, for it represents scenery on his own property, not appropriated or used as a trade-mark by the complainant. If complainant, before Rubino came into the market, and before he became the owner of the Falls, had appropriated as his trade-mark, whether registered or not, the picture of these Healing Springs Falls, it may be doubtful whether Rubino, on becoming the owner, would have had the right to adopt a picture of such Falls as his trade-mark. An interesting question would be

presented, but one not in this case—one not necessary to be decided here. It may seem hard to deprive a man of the right to use a picture or an engraving of a natural object on his own premises as he sees fit in advertising spring water coming from a spring on the same premises; but, if the owner of springs on lands formerly constituting part of the same premises has appropriated such picture as his trade-mark and used it without objection, it may be that he is to be protected, even as against the owner of the premises, and consequently the owner of the object itself. If the one picture was liable to be mistaken for the other, the use of it by the owner of the object might in some cases be a fact, with other facts, tending to establish unfair competition in trade. But all this is aside from the questions in this case. Complainant uses as its trade-mark an engraving on its labels, etc., of the "Healing Springs Cascades." Rubino, we will assume, uses as his trade-mark an engraving on his labels, etc., of the "Healing Springs Falls." It is not done with intent to mislead or defraud, nor alone can such use have that effect.

The complainant put out its bottles, etc., of water from its springs, with labels reading as follows:

"Healing Springs. A table & Medicinal Water. From the Great Thermal Region of the Appalachian Ranges.

"Analysis by Dickore & Morgan, Analytical Chemists, Cincinnati, O.

"Combinations.

"Magnesium Carbonate, 3.435 gr. per gallon.
"Magnesium Sulphate, 6.076 gr. per gallon.
"Calcium Sulphate, 2.380 gr. per gallon.
"Calcium Carbonate, 23.065 gr. per gallon.
"Sodium Sulphate, 1.673 gr. per gallon.
"Sodium Chloride, 0.143 gr. per gallon.
"Potassium Sulphate, 2.586 gr. per gallon.
"Potassium Chloride, 0.183 gr. per gallon.
"Lithia Carbonate, 0.0356 gr. per gallon.
"Ferrous Carbonate, 0.193 gr. per gallon.
"Alumina, 0.048 gr. per gallon.
"Silica, 2.677 gr. per gallon.

"Especially adapted to all forms of disease in which there exists torpidity of any of the organs connected with digestion; also of remarkable benefit in all affections of the skin.

"A delicious Table Water.

"For sale by leading druggists in the United States, or can be ordered direct from the Virginia Hot Springs Company, Hot Springs, Bath Co., Virginia."

In the center of this reading matter is found an engraving of the "Healing Springs Cascade." The label is nearly white.

In 1896 Rubino used this advertisement, viz.:

"Wait Orders. Wait Orders. Wait Orders. Wait Orders. Rubino Healing Springs Natural Lithia Water. From the Thermal Region of the Alleghany Mountains of Virginia, U. S. A. Analysis by Prof. Chas. F. Chandler, of Columbia College, N. Y. A perfect table and medicinal water. Also for sale at Acker, Merrall & Condit, and at Schoonmaker's Pharmacy, 42d St. & Park Avenue.

"Eliminates uric acid, aids digestion, prevents biliousness, strengthens the nervous system, conduces sleep, exceedingly efficacious in all forms of skin diseases; and is a specific in rheumatism and gout. Prescribed and recommended for 28 years by Dr. Henry S. Pole, resident physician, Hot Springs,

Bath County, Virginia. Testimonials and references from leading officials, business men and physicians.

"All communications addressed to The Rubino Healing Springs Co., Healing Springs, Bath County, Virginia. New York Agency & Salesroom, 7 W. 42d St."

He then used a "temporary label" as follows:

"Temporary Label.

"Lithia Water from the Rubino Healing Springs, Bath Co., Va. Eliminates uric acid, aids digestion, prevents biliousness, strengthens the nervous system, conduces sleep, exceedingly efficacious in all forms of skin diseases and is specific in rheumatism and gout.

"Prescribed and recommended for 28 years by Dr. Henry S. Pole, resident physician Hot Springs, Bath Co., Va.

"Rubino Healing Springs Co. Temporary New York Office: 3 Broad St., Drexel Building."

And then this label, viz.:

"Rubino Healing Springs Natural Lithia Water. From the Thermal Region of the Alleghany Mountains of Virginia, U. S. A. Analysis by Prof. Chas. F. Chandler of Columbia College, N. Y. A perfect table and medicinal water. For sale by all leading druggists and grocers. Eliminates uric acid, aids digestion, prevents biliousness, strengthens the nervous system, and is a specific in rheumatism and gout. Prescribed and recommended for 28 years by Dr. Henry S. Pole, resident physician, Hot Springs, Bath Co., Va.

"The Rubino Healing Springs Co., Healing Springs, Bath County, Virginia. New York Office, 56 West 45th St."

In the center of this we have an engraving of the double falls—it may be, of the "Healing Springs Falls."

Mr. Rubino has also put out advertising pamphlets and material reading in the heading, and on first page, as follows:

"Rubino Healing Springs Natural Lithia Water. Railroad Station, Hot Springs, Virginia, office and salesroom 7 West 42d St., New York City."

This address is changed to "56 West 45th St." He also says:

"Is unexcelled as a table water. Clubs and families will find in the Rubino Healing Springs Natural Lithia Water a delicious antidote for overindulgence in eating or drinking. * * * Each and every bottle bears the signature of the Rubino Healing Springs Company on the label across mouth of bottle."

In this and another advertising pamphlet Rubino gives the analysis of his water as follows:

"Analysis of Prof. Chas. F. Chandler, Columbia College, New York:

|  |  | Grains per U. S. Gallon. |
|---|---|---|
| Sodium Chloride | | 0.3215 |
| Sodium Sulphate | | 2.7658 |
| Potassium Sulphate | | 2.3436 |
| Calcium Sulphate | | 6.4841 |
| Lithium Bicarbonate | | 0.5167 |
| Strontium " " | | trace |
| Calcium " " | | 25.9330 |
| Magnesium " " | | 12.8567 |
| Iron and Alumina | | 0.1516 |
| Silica | | 1.1956 |
| Total | | 52.5686" |

On all of these advertisements we find Rubino's trade-mark—the double waterfalls, with stream in front and a background of mountains.

It will be noted that in this advertising label of the complainant's water there is no reference to "Lithia Water," while in the Rubino label not only are the words "Healing Springs" preceded by the word "Rubino," in the same large, conspicuous type, but followed by the words "Lithia Water." Then these labels are signed conspicuously by "The Rubino Healing Springs Co." It appears in some of the exhibits that on complainant's property there are two springs, the medicinal qualities or properties of which are substantially the same. See complainant's Exhibit 7, pp. 18, 25. Rubino has several springs, and in his advertising he speaks specially of springs 5 and 6 as "Lithia Water." After Mr. Rubino had come upon the market with his waters from his springs, and had put out his bottles or other containers with labels naming the water "Lithia Water," and stating among its properties "eliminates uric acid," the complainant changed its labels to imitate and compete successfully with Mr. Rubino by adding the words "Lithia Water" (words it had not before used), and by dropping the words "a delicious table water," and using the words "Uric Acid Solvent" (words not found in its prior labels, and suggested by Mr. Rubino's labels). Mr. Rubino on his labels placed the words as a signature and address: "The Rubino Healing Springs Co. Healing Springs, Bath County, Virginia. New York Office, 7 West 42d St."

Up to the time Rubino's labels appeared, complainant had said nothing in its labels of "Healing Springs, Virginia," except: "Healing Springs. A table and medicinal water. From the Great Thermal Region of the Appalachian Ranges"—and ending its label: "For sale by leading druggists in the United States, or can be ordered direct from the Virginia Hot Springs Company, Hot Springs, Bath Co. Virginia." These words of this label were as suggestive that the complainant's waters came from the Hot Springs as that they came from the Healing Springs. But now complainant changed its labels and also added the words "Healing Springs, Bath County, Virginia."

The evidence shows that there are several mineral springs, or springs with medicinal qualities, in different parts of the United States, known as "Healing Springs," and having that name. From the evidence in the case it appears clear to the court that instead of Mr. Rubino having done anything to imitate and palm off on the public the waters from his springs as water from the springs of complainant, or to deprive complainant of its trade and business, or to injure the complainant in its said business, or to confuse the public, he has done much to aid complainant in its business—much to bring the waters of complainant into prominence and into the market, and to give prominence to this Healing Springs section of Virginia. True, he does not use the word "Little" or "New." The complainant does not use the word "Old." All these springs are "Healing Springs." All these springs are at a place having a post office known as "Healing Springs." Mr. Rubino has prefaced the

word "Healing" with the word "Rubino," and he has added words "Lithia Water," and a trade-mark which so clearly distinguish and differentiate the waters he places on the market from those marketed by the complainant that the court fails to see how confusion can arise—how the complainant can be or is injured.

The complainant was idle from 1895 to 1896, or 1897, at the very latest, while Mr. Rubino was building up the springs, the locality, and the trade, and expended tens of thousands of dollars in the enterprise, and until November, 1903, when it filed this bill. In the meantime it was imitating and copying Rubino, appropriating his methods, and getting ideas from him. It imitated and copied his labels and mode of advertising, and his mode of filtering the waters. It comes into court too late, even if it ever had cause of complaint. The court finds and holds that Mr. Rubino has not intended to defraud or mislead or deceive the public, or take away any part of complainant's trade or indulge in unfair competition, and that his acts do not have those effects, or any one of them. The court also finds that the complainant has not only acquiesced in, but has copied and approved, Mr. Rubino's methods. That complainant has been guilty of such laches that it is estopped from maintaining this action. The labels and advertisements used by Mr. Rubino are so different from those of complainant that confusion and injury cannot arise. The use of the word "Rubino" before "Healing Springs," and of "Lithia Water," etc., sufficiently differentiates them. It is clear that complainant has no exclusive right to use the name "Healing" or "Healing Springs" in connection with the waters from these springs on this property now owned by complainant and by Rubino in two parcels. It had one owner, and was held as an entirety—an entire property—when it and the springs thereon took the name "Healing Springs." The defendant is simply selling the waters put up by Rubino, and, as he does not offend, the defendant does not. It is unnecessary to refer to the decided cases.

The defendant is entitled to a decree dismissing the complaint, with costs.